United States District Court
Southern District of Texas

**ENTERED**

October 13, 2020

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| EDMUNDO OROZCO, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-20-1961 |
| | § | |
| JP MORGAN CHASE BANK, N.A., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Edmundo Orozco and David Rosales sued JP Morgan on behalf of a putative class, alleging

that JP Morgan discriminated against its Hispanic employees by assigning them to less lucrative

branch locations. (Docket Entry No. 1).  JP Morgan now moves to compel arbitration and dismiss

the complaint. (Docket Entry No. 8).  Orozco and Rosales responded, and JP Morgan replied.

(Docket Entry Nos. 10, 12).  Based on the complaint, the motion, response, reply, the record, the

parties' arguments, and the controlling Supreme Court and Fifth Circuit law, the court grants JP

Morgan's motion to compel arbitration and to dismiss this action in favor of arbitration.  (Docket

Entry No. 8).  The reasons are explained below.

I.      **Background**

Orozco and Rosales began working as home lending advisors at JP Morgan branches in

Houston, Texas in 2017.  (Docket Entry No. 1 at ¶ 15; Docket Entry No. 8 at 2).  JP Morgan

emailed Orozco and Rosales employment documents when they received their employment offers

in 2017, and Orozco and Rosales signed the documents. (Docket Entry No. 8 at 2; Docket Entry

Nos. 11-1; 11-2).  One document, clearly labeled as such, was an Arbitration Agreement.  The

Agreements stated:

1

> As a condition of and in consideration of my employment with JPMorgan Chase &
> Co. or any of its direct or indirect subsidiaries, I agree with JPMorgan Chase . . .
> [that] any and all "Covered Claims" . . . shall be submitted to and resolved by final
> and binding arbitration. . . . "Covered Claims" include [in pertinent part] all legally
> protected employment related claims, excluding those set forth below in Paragraphs
> 3 and 4 of this Agreement, that I now have or in the future may have against
> JPMorgan Chase . . . which arise out of or relate to my employment or separation
> from employment with JPMorgan Chase . . . including, but not limited to, claims
> of employment discrimination or harassment if protected by applicable federal,
> state or local law, and retaliation for raising discrimination or harassment claims . .
> . and violations of any . . . federal, state, or local statute . . . including, but not
> limited to Title VII of the Civil Rights Act of 1964 . . . [and] Section 1981.

(*Id.*).  The Agreements included a waiver of class-action arbitration.  (*Id.*).

In June 2020, Orozco and Rosales sued JP Morgan, alleging violations of Title VII of the Civil Rights Act of 1964 stemming from allegedly discriminatory branch placements that resulted in low performance and higher terminations of Hispanic home-lending advisors.  (Docket Entry No. 1 at ¶¶ 1, 16–19).  JP Morgan argues that, under the Agreements, Orozco and Rosales must arbitrate these claims.  (Docket Entry No 8 at 3).  It asks the court to compel arbitration and dismiss the complaint.  (*Id.*).

Orozco and Rosales do not dispute that they signed the Agreements.  They argue that they were not told about, and do not remember signing the Agreements.  (Docket Entry No. 10 at 4; Docket Entry Nos. 10-1, 10-2).  Orozco and Rosales assert that, as a result, JP Morgan has failed to prove that the Arbitration Agreements were valid.  (Docket Entry No. 10 at 5–6).  Orozco and Rosales argue in the alternative that, because the Agreements unconscionably prevent them from pursuing their rights under Title VII, the Agreements should not be enforced.  (*Id*. at 6–8).

JP Morgan responds that both of these arguments are contrary to controlling precedents. (Docket Entry No. 12 at 1–2).  The court agrees.

## II.    The Legal Standard

The Federal Arbitration Act, 9 U.S.C. § 1 et seq., permits a party to move to compel arbitration when an opposing party refuses to arbitrate issues covered by a valid arbitration agreement. *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 493 (5th Cir. 2006) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)); 9 U.S.C. § 4. A court must decide "whether the parties agreed to arbitrate the dispute in question," which requires deciding whether: "(1) there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)). State contract law governs the validity and scope of an agreement. *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008). Federal policy strongly favors enforcing arbitration agreements if the agreements exist under state law and the disputes are within their scope. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1983); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Once a court concludes there is a valid arbitration agreement, it must then determine whether the dispute is within the scope of that agreement, following the "strong national policy favoring arbitration of disputes, and [resolving] all doubts concerning the arbitrability of claims . . . in favor of arbitration." *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004) (quotations omitted); *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002).

If there is an enforceable agreement to arbitrate the dispute, the court must determine whether any federal statute or policy makes the claims nonarbitrable. *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007). Because of the strong policy favoring arbitration, "a party seeking to invalidate an arbitration agreement bears the burden of establishing

3

its invalidity." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).  The

Federal Arbitration Act requires district courts to order arbitration of all arbitrable claims.  *Sedco,*

*Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.* (*In re Sedeco, Inc.*), 767 F.2d 1140, 1147 (5th

Cir. 1985).  District courts should dismiss rather than stay litigation pending arbitration if all issues

must be resolved by arbitration.  *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th

Cir. 1992).

> ### III.    Analysis
>
> #### A.    A Valid Arbitration Agreement Exists

At the first step, the court evaluates "whether there is any agreement to arbitrate any set of

claims." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016).  "Although

there is a strong federal policy favoring arbitration, 'this federal policy favoring arbitration does

not apply to the determination of whether there is a valid agreement to arbitrate between the

parties.'" *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (quoting

*Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)).  The party seeking

arbitration must show, by a preponderance of the evidence, that the arbitration agreement exists.

*Banks v. Mitsubishi Motors Credit of Am., Inc.*, 435 F.3d 538, 540 (5th Cir. 2005); *Holmes v. Air*

*Liquide USA LLC*, No. H-11-cv-2580, 2012 WL 267194, at *1 (S.D. Tex. Jan. 30, 2012), *aff'd* 498

F. App'x 405 (5th Cir. 2012); *see also Chester v. DirecTV, L.L.C.*, 607 F. App'x 362, 363–64 (5th

Cir. 2015) (per curiam).

State law controls whether there is a valid agreement.  *Banks*, 435 F.3d at 540.  Traditional

contract law governs arbitration agreements in Texas.  *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d

223, 227 (Tex. 2003).  The party arguing validity must show: "(1) an offer, (2) acceptance in strict

compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the

terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding."

*Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex. App.—Houston [14th Dist.]

2010, pet. denied).

JP Morgan argues that the signed Arbitration Agreements are valid.  (Docket Entry. No.

12 at 2–4).  While JP Morgan did not initially submit signed copies of the Agreements with its

motion to dismiss, it did so in a timely fashion.  (Docket Entry No. 12 at 2; Docket Entry Nos. 11-

1, 11-2).  Orozco and Rosales argue that the Agreements are not valid because neither was given

advance notice of what they were signing and neither remembers signing the Agreements.  (Docket

Entry No. 10 at 4–6; Docket Entry Nos. 10-1, 10-2).  The Arbitration Agreements were part of the

materials that Orozco and Rosales received with their employer offer letters.  (Docket Entry No. 8

at 2; Docket Entry Nos. 11-1, 11-2).  Each letter explained that the offer of employment was

"subject to all the terms, conditions and attachments included in this document, the Binding

Arbitration Agreement and all [JP Morgan] policies and procedures."  (Docket Entry No. 8 at 2;

Docket Entry No. 11-1 at 3; Docket Entry No. 11-2 at 3).

JP Morgan satisfied its burden to provide notice to Orozco and Rosales by giving them the

Arbitration Agreements.  *See In re Dallas Peterbilt, Ltd., L.L.P*., 196 S.W.3d 161, 162 (Tex. 2006)

(the notice requirement is satisfied by the underlying agreement or by other communications

providing knowledge of the underlying agreement); *Banuelos v. Alorica, Inc*., No. EP-20-CV-65-

DB, 2020 WL 4060781, at *4 (W.D. Tex. July 20, 2020) (same).

Orozco and Rosales also argue that the Agreements are not valid because they do not

remember signing.  Orozco and Rosales have not asserted any recognized basis for finding the

Agreements procedurally unconscionable.  *See Velasquez v. WCA Mgmt. Co.*, No. 4:15-CV-02329,

2016 WL 4440332, at *10 (S.D. Tex. Aug. 23, 2016) ("The only situations in which Texas courts

have found an agreement to be procedurally unconscionable are 'those in which one of the parties was incapable of understanding the agreement without assistance, and the other party did not provide that assistance, such as where one of the parties was functionally illiterate or where one of the parties did not speak English.'" (quoting *BBVA Compass Inv. Solutions, Inc. v. Brooks*, 456 S.W.3d 711, 724 (Tex. App.—Fort Worth 2015, no pet.)) (citing *Fleetwood*, 280 F.3d at 1077). Orozco's and Rosales's "claims to have forgotten about the Agreement, [are] no reason to excuse [them] from [their] obligation." *Cooks v. Soto*, 3:15-CV-1929-B, 2015 WL 9583806, at \*2 (N.D. Tex. Dec. 30, 2015).  The Arbitration Agreements are enforceable.

### B. The Title VII Claims Are Arbitrable

Orozco and Rosales argue that, even if the Agreements are valid, it would violate public policy to order arbitration of their Title VII discrimination claims.  (Docket Entry No. 10 at 6–8). JP Morgan replies that Title VII claims are arbitrable.  (Docket Entry No. 12 at 4–5).  JP Morgan is correct.

The Arbitration Agreements explicitly state that the covered claims include "claims of employment discrimination or harassment if protected by applicable federal, state or local law, and retaliation for raising discrimination or harassment claims . . . and violations of any . . . federal, state, or local statute . . . including, but not limited to Title VII of the Civil Rights Act of 1964." (Docket Entry No. 11-1 at 8; Docket Entry No. 11-2 at 8).   This term is binding, and the Title VII claims are arbitrable.  *See Gilmer*, 500 U.S. at 26 (statutory claims may be arbitrable); *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229, 230 (5th Cir. 1991) ("Title VII claims can be subjected to compulsory arbitration. Any broad public policy arguments against such a conclusion were necessarily rejected by *Gilmer*."); *see also Bowles v. OneMain Fin. Grp., L.L.C.*, 954 F.3d 722, 728 (5th Cir. 2020) (district court correctly referred Title VII claims to arbitration).

6

**C. Dismissal**

Dismissal is appropriate when "all of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). Because all the claims must be submitted to arbitration, the case is dismissed, without prejudice, in favor of arbitration.

**IV.    Conclusion**

The court grants JP Morgan's motion to compel arbitration and to dismiss Orozco's and Rosales's complaint. (Docket Entry No. 8). An order of dismissal is separately entered.

SIGNED on October 13, 2020, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge